UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

------------------------------------------------------------

HADI BESHKANI,

Petitioner,

v.

26-cv-603-JON
**OPINION & ORDER**

MICHAEL BALL, in his official capacity as Acting Deputy Field Office Director, Buffalo Field Office, U.S. Immigration and Customs Enforcement and *de facto* Warden of the Buffalo Federal Detention Facility,

Respondent.[1]

------------------------------------------------------------------

Pending before the Court[2] is a petition for a writ of habeas corpus ("Petition"), filed on March 27, 2026, by Petitioner Hadi Beshkani, Dkt. No. 1, and a Motion to Dismiss for Failure to State a Claim ("Response"), filed by the Respondent on April 30, 2026, Dkt. No. 7. On May 14, 2026, the Petitioner filed a Memorandum of Law in Further Support of the

[1] "[L]ongstanding practice confirms that in habeas challenges to present physical confinement-'core challenges'-the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). The Clerk is requested to add MICHAEL BALL, in his official capacity as Acting Deputy Field Office Director, Buffalo Field Office, U.S. Immigration and Customs Enforcement and *de facto* Warden, Buffalo Federal Detention Facility as a Respondent in the caption, remove all other Respondents from the caption, dismiss the other Respondents from the case, and conform the official caption accordingly.
[2] The case was assigned to this Court on May 20, 2026. Dkt. entry following Dkt. No. 11.

Petition and in Opposition to Respondent['s] Motion to Dismiss. Dkt. No.10. The Petition seeks a writ of habeas corpus in order to obtain a bond hearing.

**Facts**

Beshkani is a citizen of Iran. Petition ¶ 1. On September 6, 2024, officers of the United States Border Patrol encountered him near the Mexican-California border at San Ysidro. Response 2. He admitted to illegally crossing the border. *Id*. Because Beshkani was encountered within 100 miles of the border and 14 days of entry, he was subject a process known as "expedited removal."[3] Immigration and Nationality Act ("INA") § 235(b)(1)(A)(iii), 8 U.S.C. § 1225(b)(1)(A)(iii).[4] On September 6, 2024, he was issued a Notice and Order of Expedited Removal. Petition ¶ 20.

---

[3] The process has been explained by the Congressional Reference Service. https://www.congress.gov/crs-product/R45314#ifn119. It was authorized by the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L No.104-208, § 235, 110 Stat. 3009, 546, 579-80 (1996). In brief, summary removal applies to aliens who are not admissible because they lack valid entry documents or attempted to obtain admission through fraud. With some exceptions, such aliens are subject to expedited removal without compliance with all of the procedural protections normally applicable to removal.

[4] The significance of Beshkani's being found within 14 days of his unlawful entry and within 100 miles of the border is not apparent from INA § 302, 8 U.S.C. § 1225, because neither the phrase "14 days of his unlawful entry" nor the phrase "100 miles of the border" appears in section 1225.

The significance of these phrases for the expedited removal process emerges from the careful analysis made by Chief Judge Wolford in *St. Charles v. Barr*, 514 F. Supp. 3d 570, 576 (W.D.N.Y. 2021):

"When the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, was passed, the Attorney General's authority under § 1225(b)(1)(A)(iii)(I) was delegated to the Secretary of the Department of Homeland Security ("DHS"). In 2004, DHS used this authority to designate as 'certain other aliens' the following:

> "Aliens determined to be inadmissible under sections 212(a)(6)(C) or (7) of the Immigration and Nationality Act who are present in the U.S. without having been admitted or paroled following inspection by an immigration officer at a designated port-of-entry, who are encountered by an immigration officer within 100 air miles of the U.S. international land border, and who have not established to the satisfaction of an immigration officer that they have been physically present in the U.S. continuously for the fourteen-day (14-day) period immediately prior to the date of encounter.

"Designating Aliens for Expedited Removal, 69 Fed. Reg. 48877-01, 48879 (Aug. 11, 2004) . . . . In other words, aliens who unlawfully enter the United States and are detained within 14 days of entry and within 100 miles of the border are treated the same as "arriving aliens" under the current statutory and regulatory scheme."

On October 24, 2024, Beshkani received a credible fear interview,[5] and an Asylum Officer found that he had demonstrated a credible fear of persecution and torture if returned to Iran. Petition ¶ 22. On September 12, 2025, an Immigration Judge denied his application for asylum and other relief from removal and ordered him removed to Iran. *Id*. ¶ 26. On October 7, 2025, Beshkani filed a notice of appeal to the Board of Immigration Appeals. *Id*. ¶ 27. The appeal remains pending. *Id*.

Beshkani has been detained since the Border Patrol encountered him on September 6, 2024. He is currently confined at the Buffalo Federal Detention Facility in Batavia, New York. *Id*. ¶ 9.

## Discussion

The parties agree that the statute applicable to Beshkani's detention is INA 235 § 1225(b), 8 U.S.C. § 1225(b). Petition ¶ 50; Response 1. Subsection 1225(b)(1)(B)(iii)(IV) provides:

> **"Mandatory Detention**
>
> "Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed."

The Respondent asserts that "this case presents a single, straightforward question: Is a noncitizen who was detained shortly after crossing the border and never

[5] This credible fear interview, conducted by an asylum officer, should not be confused with the proceeding, conducted by an immigration judge, at a hearing on a claim for asylum convened to determine whether an alien has a reasonable fear of persecution on specified grounds if returned to his home country. 8 U.S.C. § 1158.

released from immigration detention entitled to a bond hearing during the pendency of his removal proceedings? . . . [T[he answer is unequivocally 'no.'" Response 1.

The Respondent relies primarily on *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), and *Thuraissigiam*'s citation of *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953). Response 1.

In *Thuraissigiam*, the noncitizen, who had been arrested near the border after an unlawful entry, "invoke[d] the writ [of habeas corpus] . . . to obtain additional administrative review of his asylum claim and ultimately to obtain authorization to stay in this country." 591 U.S. at 107. Those are not the claims Beshkani is making. He seeks a bond hearing that might, subject to the conditions of his bond, obtain his conditional release from a prolonged detention, not authorization to stay in this country. As *Thuraissigiam* recognized, "Habeas has traditionally been a means to secure *release* from unlawful detention." *Id*. (emphasis in original).

But *Thuraissigiam* made an additional ruling. The Court ruled that because Thuraissigiam "attempted to enter the country illegally and was apprehended [near] the border[,] [h]e . . . has no entitlement to procedural rights other than those afforded by statute." *Id.* Beshkani also entered the country illegally and was apprehended near the border. There is, however, an important distinction between his case and that of Thuraissigiam's.

In Thuraissigiam's case, "[t]he asylum officer . . . determined that he lacked a 'credible' fear of persecution." *Id*. at 114. However, in Beshkani's case "an Asylum Officer found that Petitioner had demonstrated a credible fear of persecution or torture."

Response 2. More significantly, Thuraissigiam was seeking "vacatur of his 'removal order,'" *id*.at 117, a claim Beshkani is not making.

*Mezei* is even more distinguishable from Beshkani's case than is Thuraissigiam's. The noncitizen in *Mezei* had been "permanently excluded from the United States on security grounds" and "was stranded in his temporary haven on Ellis Island because other countries will not take him back," 345 U.S. at 207. The Supreme Court considered his case "an exclusion proceeding," *id*. at 213, yet, even as such, ruled that "he may by habeas corpus test the validity of his exclusion," *id*.

Because there has not been a final determination of Beshkani's credible fear of persecution, he must be detained *as a matter of statutory law*. However, the Supreme Court has held that the Fifth Amendment entitles noncitizens to due process in removal proceedings, *Reno v. Flores*, 507 U.S. 292, 306 (1993), and Beshkani is in removal proceedings. The question therefore arises whether the due process to which he is entitled includes a bond hearing.

Two recent decisions from the Second Circuit indicate that it does.

Two years ago, in *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024), *cert. granted sub nom. Genalo v. Black*, No. 25-886, 2026 WL 1718025 (Sup. Ct. June 15, 2026), the Second Circuit considered a claim for a bond hearing asserted by a noncitizen detained pursuant to a different statute, INA § 236, 8 U.S.C. § 1226(c). That subsection provides for detention of "noncitizens who are charged with removability based on a prior conviction on specified criminal grounds," *id*. at 137, as Black had been. Recognizing that detention under subsection 1226(c) "'for the limited period of . . . removal proceedings[,]' without a bond hearing does not violate the statute, the Court of appeals, applying the

due process standards of *Mathews v. Eldridge*, 424 U.S. 319 (1976), ruled that the seven month detention of Black and the 21 month detention of the co-petitioner, G.M. (measured up to the filing of their habeas corpus petitions) required bond hearings. *Black*, 103 F. 4th at 159.

From the date of Beshkani's apprehension on September 6, 2024, until the filing of his habeas corpus petition on March 27, 2026, he has been detained for more than 17 months without a bond hearing. *Black* requires providing him with a bond hearing.

I recognize that *Black* adjudicated the habeas corpus petition of an illegal immigrant detained pursuant to a subsection of section 1226 whereas Beshkani is detained pursuant to a subsection of section 1225. However, the Second Circuit's decision in *Black* did not turn on the wording of any provision in section 1226. On the contrary, the Court recognized that the relevant subsection of section 1226 required continued detention without a bond hearing. *Id*. at 141-42. Black's entitlement to a bond hearing came from the Due Process Clause. The same is true for an illegal immigrant detained pursuant to the relevant subsection of section 1225. In one respect, Beshkani's Due Process claim for a bond hearing is stronger than Black's. Black had been convicted of committing crimes. *Black*, 103 F. 4th at 138-39. Beshkani has not.

It is arguable that the Supreme Court's grant of the Government's petition for a writ of certiorari in *Black* (case now named *Genalo*) should prompt this Court to postpone ruling on Beshkani's habeas corpus petition until the Supreme Court completes its review process and issues an opinion. However, the certiorari petition was granted on June 15, 2026, the Court is now in recess, it will not reconvene until the start of the 2026 Term on October 5, 2026, and will likely not decide *Genalo* until sometime in 2027. By that time,

without a successful bond hearing, Beshkani's detention will have exceeded two years. Awaiting the Supreme Court's ultimate decision in *Genalo* would extend the period of Beshkani's denial of due process without justification.

Nearly one month ago, on July 21, 2026, the Second Circuit made clear that although the use of habeas corpus to challenge the basis for removal of an illegal immigrant was prohibited by INA § 242, 8 U.S.C, § 1252(b)(9), its use to challenge the length or conditions of confinement without bail hearings was not. *See Mahdawi v. Trump*, No. 25-1113, 2026 WL 2090981 (2d Cir. July 23, 2026). The Court relied on the plurality opinion in *Jennings v. Rodriguez*, 583 U.S. 281 (2018). Noting that the habeas corpus petitioners in *Jennings* "merely sought bond hearings for those in prolonged confinement . . . the plurality concluded that [the petitioners'] habeas claim did not fall within the reach of § 1252(b)(9)'s jurisdictional bar." *Mahdawi*, 2026 WL 2090981, at *8.

Examination of the Second Circuit's docket reveals that the mandate has not yet been issued in the *Mahdawi* case. Until the mandate issues, jurisdiction remains with the Court of Appeals, and the opinion could be revised. Nevertheless, a published opinion of the Court of Appeals for this Circuit is "binding precedent when it is decided," even though the mandate has not issued. *Cox v. Dep't of Justice,* 111 F.4th 198, 209 (2d Cir. 2024).

Since confined illegal immigrants can use the writ of habeas corpus in some circumstances to obtain release from prolonged confinement, they can use it to secure the lesser included remedy of a bond hearing that, if successful, will release them subject to conditions on their release.

For all of these reasons the petition for a writ of habeas corpus is GRANTED to the extent of ordering that Beshkani shall receive a bond hearing within the Western District of New York, no later than five days from the date of this opinion. Because Beshkani will still be in custody unless and until bond is set and posted, he will remain in custody while transported to the hearing and at the hearing. If convenient, an Immigration Judge may hold the bond hearing at the place of Beshkani's current confinement. At the hearing, the Government shall bear the burden of proof to show that Beshkani is a flight risk or a danger to the community. *See Demir v. Ball*, No. 26-cv-00525-JON, 2026 WL 1830790 (W.D.N.Y. June 25, 2026).

It is further Ordered that the Respondent's motion to dismiss the Petition for failure to state a claim is DENIED.

It is further ORDERED that the Respondent promptly notify this Court when a bond hearing for Beshkani has been held and the result of that hearing.

The Court reminds the Respondent, and any persons acting in concert with him, that the injunction issued by Judge Vilardo on March 20, Dkt. No. 2, remains in effect, pending further order of this Court.

SO ORDERED.

Hon. Jon O. Newman
Senior Circuit Judge of the U.S. Court of Appeals
for the Second Circuit, sitting by designation

DATED: August 18, 2026